**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------x
                                     :
United States of America             :
                                     :
                                     :    08 Cr. 390 (BSJ)
              v.                     :    **Opinion and Order**
                                     :
Milton Smith,                        :
                                     :
                        Defendant.   :
------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/25/09

**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

On February 27, 2009, upon the conclusion of a five-day trial, a jury found Milton Smith ("Smith") guilty of (1) conspiring to commit and (2) committing extortion under color of official right in violation of the Hobbs Act, 18 U.S.C. § 1951 and of (3) conspiring to commit and (4) committing bribery in connection with his employment at the New York City Department of Education ("DOE") in violation of 18 U.S.C. §§ 666 and 371. On May 13, 2009, Smith moved for a post-verdict judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29, or, in the alternative, for a new trial pursuant to Federal Rule of Criminal Procedure 33. For the reasons stated below, Smith's Motion is DENIED in its entirety.

## BACKGROUND

Smith was tried on charges contained in an Indictment filed on May 6, 2008 (the "Indictment"). That Indictment describes a broad bribery and extortion scheme involving the DOE's Office of

Pupil Transportation ("OPT") that commenced in the mid-1990s and continued for more than a decade. The Indictment alleges that Smith and other DOE employees used their official positions to solicit and receive cash payments from various bus company owners who held and sought transportation contracts with DOE, sometimes in exchange for various improper benefits. (Indictment ¶¶ 9-10.)

Briefly, the evidence at trial established that, over the course of the scheme, Smith and other DOE employees awarded bus companies with field trip assignments and other benefits in exchange for cash bribes. Until late 2003 or early 2004, Smith was in charge of the DOE's field trips unit. In late 2003 or early 2004, Smith's responsibilities shifted from field trips to inspections.

**DISCUSSION**

I.   Motion for a Judgment of Acquittal

1.   Legal Standard

Federal Rule of Criminal Procedure 29(a) provides that "the court on the defendant's motion must enter a judgment of acquittal on any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). Specifically, a court must grant a motion under Rule 29 if there is "no evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt." United States v.

2

Irving, 452 F.3d 110, 117 (2d Cir. 2006) (quotation omitted); see also United States v. Guadagna, 183 F.3d 122, 130 (2d Cir. 1999) ("[T]he court may enter a judgment of acquittal only if the evidence that the defendant committed the crime is nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt." (internal quotation omitted)). "[I]f the evidence viewed in the light most favorable to the prosecution gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence, then a reasonable jury must necessarily entertain a reasonable doubt." United States v. Hawkins, 547 F.3d 66, 71 (2d Cir. 2008). However, "[t]he ultimate question is not whether [the court] believe[s] the evidence adduced at trial established [the defendant's guilt], but whether any rational trier of fact could so find."  United States v. Eppolito, 543 F.3d 25, 45-46 (2d Cir. 2008) (internal quotation omitted).  Therefore, "a defendant making an insufficiency claim bears a very heavy burden."  United States v. Desena, 287 F.3d 170, 177 (2d Cir. 2002).

In considering the sufficiency of the evidence, the court must "view all of the evidence in the light most favorable to the government, crediting every inference that could have been drawn in the government's favor." United States v. Ware, 577 F.3d 442, 447 (2d Cir. 2009). A court must analyze the pieces

3

of evidence not separately, in isolation, but together, in conjunction with one another. See United States v. Autuori, 212 F.3d 105, 114 (2d Cir. 2000) ("We consider the evidence in its totality, not in isolation, and the government need not negate every theory of innocence."). Accordingly, a court must apply the sufficiency test "to the totality of the government's case and not to each element, as each fact may gain color from the others." Guadagna, 183 F.3d at 130.

In particular, "the task of choosing among competing, permissible inferences is for the fact-finder, not for the reviewing court." United States v. Khedr, 343 F.3d 96, 104 (2d Cir. 2003) (internal quotation omitted). Furthermore, "the jury's verdict may be based on entirely circumstantial evidence." United States v. Santos, 541 F.3d 63, 70 (2d Cir. 2008) (internal quotation omitted). Because the jury is entitled to choose which inferences to draw, the government, in presenting a case based on circumstantial evidence, "need not exclude every reasonable hypothesis other than that of guilt." Guadagna, 183 F.3d at 130 (internal quotation omitted). However, "a conviction based on speculation and surmise alone cannot stand." Santos, 541 F.3d at 70.

### 2. Prior Rule 29 Motion

On February 26, 2009, Smith moved for a pre-verdict judgment of acquittal on the basis that the trial evidence was

4

insufficient to support his conviction.  In this prior Rule 29 motion, Smith highlighted the Indictment's statement that:  "At all times relevant to this Indictment, MILTON SMITH, the defendant, was an OPT employee in the special education section. SMITH was an inspector responsible for conducting certain OPT operations in Brooklyn."  (Indictment ¶ 7.)  Based on this language, Smith argued that the evidence adduced at trial—much of which related to Smith's conduct as head of the field trips unit rather than to his conduct as an inspector—did not suffice to convict him of the charges set forth in the Indictment.  (See Def. Mot. Feb. 26, 2009.)

On April 22, 2009, this Court denied Smith's February 26 motion, holding that:

> First, the trial proof includes evidence which, viewed in the light most favorable to the Government, establishes that Smith was an OPT special education inspector during and after his stint as head of the field trips unit and during the time when he took the bulk of the bribes proved at trial, from 2000 to early 2004.  Second, even were the proof at trial limited to Smith's conduct after early 2004, that proof—viewed in the light most favorable to the Government—suffices to support Smith's conviction on all four counts."

(Order Apr. 22, 2009.)

In this ruling, the Court credited the testimony of Joseph Termini ("Termini"), who provided evidence relating to Smith's time as a special education inspector.  Termini knew Smith to be an "inspector" for DOE, and he testified that Smith conducted

5

routine inspections at his bus yards approximately once or twice a year" and "six to ten times" total, "from 2000, 2001 on" until 2005 or 2006. (Tr. 522, 526-27.) Termini stated that Smith "possibly" inspected his buses in 2002 and "probably" inspected his buses in 2003. (Tr. 526-27.) Termini testified about a specific garage inspection that Smith conducted in Brooklyn in or around 2005, and indicated that he understood that Smith had accepted a bribe in return for leniency in this particular inspection. (See Tr. 524.)

### 3. Instant Rule 29 Motion

In the instant Motion, Smith moves again for a verdict of acquittal pursuant to Federal Rule of Criminal Procedure 29 on precisely the same basis. In his Motion, Smith argues again that the evidence adduced at trial was insufficient to establish that he was an OPT special inspector from 2000 until early 2004. Smith also argues that, were the proof at trial limited to his conduct after 2004, that proof would be insufficient to support a conviction.

For the reasons stated in the April 22 Order, this Court finds that Termini's testimony, viewed in the light most favorable to the Government, provided evidence from which a reasonable mind might conclude guilt beyond a reasonable doubt.

See Irving, 452 F.3d at 117.[1]  The fact that Termini was unable to testify with certainty about how many inspections Smith conducted in a given year does not undermine Termini's unqualified testimony that Smith was an inspector starting in 2000 or 2001, and that Smith regularly conducted bus inspections at Termini's yards until 2005 or 2006.  Termini's testimony establishes that, as an inspector and after early 2004, Smith used his official position to deliver official benefits in exchange for cash bribes.

Because the jury heard ample evidence that Smith conspired to commit and committed extortion and bribery under color of official right and in connection with his official position at the DOE, Smith's motion for a judgment of acquittal must be DENIED.

## II.  Motion for a New Trial

### 1.  Legal Standard

Federal Rule of Criminal Procedure 33(a) provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires."  Fed. R. Crim. P. 33(a).  In evaluating a Rule 33 motion, "[t]he district court must examine the entire case, take

---

[1] As noted in the April 22 Order, Termini's testimony was bolstered by the statements of other witnesses, including extensive testimony by cooperating witnesses Jeffrey Dunat and Geoffrey Berger as to the corrupt relationship between Defendant and co-conspirator George Ortiz. (See Order Apr. 22, 2009 6 & n.3.)

7

into account all facts and circumstances, and make an objective evaluation." United States v. Ferguson, 246 F.3d 129, 134 (2d Cir. 2001). Ultimately, the trial court must be satisfied that "competent, satisfactory and sufficient evidence in the record supports the jury verdict." Id. (internal quotation omitted).

Under Rule 33, trial courts have "broad discretion . . . to set aside a jury verdict and order a new trial to avert a perceived miscarriage of justice." United States v. Polouizzi, 564 F.3d 142, 159 (2d Cir. 2009) (internal quotation omitted). However, "[t]he defendant bears the burden of proving that he is entitled to a new trial under Rule 33." United States v. McCourty, 562 F.3d 458, 475 (2d Cir. 2009) (internal quotation omitted). Before ordering a new trial pursuant to Rule 33, "a district court must find that there is a real concern that an innocent person may have been convicted." Id. (internal quotation omitted). Stated otherwise, the court must be satisfied that "it would be a manifest injustice to let the guilty verdict stand." United States v. Sanchez, 969 F.2d 1409, 1414 (2d Cir. 1992) (internal quotation omitted); see also Ferguson, 246 F.3d at 133 ("The ultimate test on a Rule 33 motion is whether letting a guilty verdict stand would be a manifest injustice.").

As the Second Circuit recently reiterated in United States v. Bell:

> Manifest injustice cannot be found simply on the basis of the trial judge's determination that certain testimony is untruthful, unless the judge is prepared to answer "no" to the following question: "Am I satisfied that competent, satisfactory and sufficient evidence in this record supports the jury's finding that this defendant is guilty beyond a reasonable doubt?" In making this assessment, the judge must examine the totality of the case. All the facts and circumstances must be taken into account. An objective evaluation is required. There must be a real concern that an innocent person may have been convicted. It is only when it appears that an injustice has been done that there is a need for a new trial "in the interest of justice."

584 F.3d 478, 483 (2d Cir. 2009) (quoting Sanchez, 969 F.2d at 1414). Given the stringency of this standard, "motions for a new trial are disfavored in this Circuit," United States v. Gambino, 59 F.3d 353, 364 (2d Cir. 1995), and Rule 33 motions are granted only "sparingly and in only the most extraordinary circumstances." Ferguson, 246 F.3d at 134. In particular, a trial court may disregard witness testimony only where it is "patently incredible or defies physical realities." Sanchez, 969 F.2d at 1414. Thus, "[i]t is only where exceptional circumstances can be demonstrated that the trial judge may intrude upon the jury function of credibility assessment." Id.

### 2.   Smith's Rule 33 Motion

Smith contends that he is entitled to a new trial under Rule 33 because (1) the Government's proof at trial constructively amended the Indictment; (2) the evidence adduced at trial unconstitutionally varied from the crime charged in the

9

Indictment; (3) the Indictment was unconstitutionally vague; (4) the Court improperly admitted late-disclosed evidence; and (5) the combination of the variance between the Indictment and the proof at trial and the late-disclosed evidence caused Smith prejudice.

The Court notes that Smith does not claim to be innocent of the crimes charged in the Indictment. See, e.g., Bell, 584 F.3d at 483 (requiring that a judge granting a new trial find a real concern that an innocent person may have been convicted). Nor does he point to any extraordinary circumstances that would justify a new trial. With this understanding, the Court addresses Smith's claims as listed above, and finds them insufficient to warrant a new trial.

1. There Was No Constructive Amendment or Prejudicial Variance

In United States v. Resendiz-Ponce, the Supreme Court reiterated the two constitutional requirements for an indictment: "first, that it contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, that it enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." 549 U.S. 102, 108 (2007) (internal quotation omitted). Therefore, "[t]he issue in determining whether an indictment has been constructively amended . . . is whether the deviation between the facts alleged

in the indictment and the proof adduced at trial undercuts these constitutional requirements." United States v. Rigas, 490 F.3d 208, 228 (2d Cir. 2007). To prevail on a constructive amendment claim, "a defendant must demonstrate that either the proof at trial or the trial court's jury instructions so altered an essential element of the charge that, upon review, it is uncertain whether the defendant was convicted of conduct that was the subject of the grand jury's indictment." United States v. Salmonese, 352 F.3d 608, 620 (2d Cir. 2003) (internal quotation omitted).

In evaluating a constructive amendment claim, it is important to recall that "not all modifications constitute constructive amendments." Salmonese, 352 F.3d at 621. On the contrary, the Second Circuit has "consistently permitted significant flexibility in proof, provided that the defendant was given notice of the core of criminality to be proven at trial." Rigas, 490 F.3d at 228; see also id. ("Proof at trial need not, indeed cannot, be a precise replica of the charges contained in an indictment." (internal quotation omitted)). Because of this, the government may "carry its burden . . . by proving any alleged or unalleged overt act that fit within the 'core of criminality' identified in the indictment." Salmonese, 352 F.3d at 621.

11

"A variance occurs when the charging terms of the indictment are left unaltered, but the evidence offered at trial proves facts materially different from those alleged in the indictment." Id. (internal quotation omitted). Whereas a constructive amendment is "a per se violation of the grand jury clause, a defendant must show prejudice in order to prevail on a variance claim." Id.; see also United States v. McDermott, 245 F.3d 133, 139 (2d Cir. 2001) (reiterating principle that variance must cause "substantial prejudice" to warrant reversal). To determine whether a variance between an indictment and the proof at trial is prejudicial, the Second Circuit looks to "whether the variance infringes on the substantial rights that indictments exist to protect—to inform an accused of the charges against him so that he may prepare his defense and to avoid double jeopardy." United States v. Dupre, 462 F.3d 131, 140 (2d Cir. 2006).

In the instant case, Smith points again to the language in the Indictment's stating that: "At all times relevant to this Indictment, MILTON SMITH, the defendant, was an OPT employee in the special education section." (Indictment ¶ 7.) Based on this language, Smith argues that, because much of the evidence adduced at trial related to his conduct as head of the field trips unit rather than to his conduct as an inspector, that proof constituted a constructive amendment of the Indictment.

12

In the alternative, Smith argues that the proof adduced at trial proved facts materially different from those alleged in the Indictment.

These claims are unavailing. The "core of criminality" alleged in the Indictment is that Smith conspired to commit and committed extortion under color of official right in violation of the Hobbs Act, 18 U.S.C. § 1951, and that he conspired to commit and committed bribery in connection with his employment at the DOE in violation of 18 U.S.C. §§ 666 and 371. (See Indictment.) Specifically, the Indictment states that, "from at least in or about the mid-1990s until in or about 2007 . . . [Smith and others], all of whom were employees of the New York City Department of Education . . . agreed among themselves and with other DOE employees not named as defendants in this Indictment to use their official positions with DOE to obtain cash payments from bus company owners." (Id. ¶ 15.) The Indictment charges that Smith and his co-conspirators agreed "to solicit and accept cash bribes from owners of school bus companies that contracted with DOE, in order to influence the defendants' actions as employees of DOE." (Id. ¶ 20.) The Indictment states that Smith and his co-conspirators "collected cash payments from bus company owners in connection with the allocation of certain DOE bus routes to those bus company owners," and that Smith and his co-conspirators awarded bus

13

company owners "extended runs" in return for the cash payments. (Id. ¶ 11, 12.)[2] With respect to Smith, the Indictment specifies that "[f]rom at least in or about the late 1990s up to and including at least in or about 2005, Milton Smith . . . received cash payments from bus company owners who contracted with DOE." (Id. ¶ 21(c).)

The Government amply proved the essential elements of these offences, and thus did not constructively amend the Indictment. See, e.g., United States v. Patino, 962 F.2d 263, 266 (2d Cir. 1992) ("[A]n impermissible alteration of the charge must affect an essential element of the offense.") Even if Smith were correct that Government did not prove the particular bribes alleged in the Indictment—which he is not—the trial proof concerned the same overarching scheme described in the Indictment. See, e.g., Dupre, 462 F.3d at 140-41 (finding that defendant had notice of the "core of criminality" even though the government failed to prove the only wire transfer alleged in the indictment, because "the evidence at trial concerned the same elaborate scheme to defraud investors as was described in the indictment"); United States v. Delano, 55 F.3d 720, 729 (2d Cir. 1995) (holding that although the government was required to prove that a government agency received federal funding, as alleged in the indictment, "the distinction between the 'City of

---

[2] As multiple witnesses testified, "extended runs" included field trips. (See Tr. 440, 447, 577, 604.)

14

Buffalo Parks Department' and the 'City of Buffalo,' did not materially alter the section 666 count). In the instant case, the Government successfully proved facts in the Indictment relating to Smith's official position—i.e. that Smith used his official position to deliver official benefits in exchange for cash bribes. (See Order Apr. 22, 2009 6.) As in Delano, whether Smith worked in one sub-division of DOE or another does not matter for the purpose of the required statutory elements. See Delano, 55 F.3d at 729; 18 U.S.C. §§ 1951, 666.

Moreover, if there was variance, it was not prejudicial to Smith. Smith's counsel had ample notice ahead of trial not only of the "core of criminality" set forth in the Indictment, but also of specific facts relating to Smith's delivery of field trip routes to the bus companies that paid him. The Government made clear in pre-trial disclosures that "the evidence will show that Smith took thousands of dollars in illegal cash payments from bus company owners in exchange for assigning lucrative mid-day bus routes and field trip bus routes to the paying companies." (Gov't Mem. Jan. 6, 2009 2;) see also Dupre, 462 F.3d at 140-41 (holding that the government's pre-trial discloses placed defendant on notice of conduct at issue at trial, even if that conduct lay outside terms of the indictment).

Because Smith had ample notice of the "core of criminality" to be proven at trial and therefore there was no constructive amendment, and because any variance was not prejudicial to Smith, Smith's motion for a new trial on these grounds is DENIED.

### 2. The Indictment Was Not Unconstitutionally Vague

Defendant argues that the Indictment was unconstitutionally vague because it failed to specify the types of official benefits that Smith conferred in exchange for bribes and failed to specify the specific position that Smith occupied while accepting these bribes. (See Def. Mem. 31-32.)

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation." U.S. Const. amend. VI. To satisfy these requirements, however, "an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." United States v. Stavroulakis, 952 F.2d 686, 963 (2d Cir. 1992). Stated otherwise, the constitution requires only that an indictment contain the elements of the offense in sufficient detail to fairly inform the defendant of the charges he must meet and to enable him to plead double jeopardy in any future prosecution for the same offense. See Resendiz-Ponce, 549 U.S. at 107-08.

16

Contrary to Smith's claims, the indictment does not need to contain tremendous factual detail explaining how the crimes were committed, or specifying the nature, time, and place of every overt act taken in furtherance of the conspiracies, or setting forth all the evidence the prosecution intends to introduce at trial. As discussed supra, the Indictment states that Smith used his official position at DOE to collect cash bribes in exchange for official benefits, including the allocation of certain DOE bus routes. (See Indictment ¶ 11, 12, 15, 17, 20, 21, 22.) This language alone provided Smith with ample notice of the charges against him, and satisfied the constitutional requirements of the Sixth Amendment.

Because the Indictment was constitutionally adequate, Smith's motion for a new trial on Sixth Amendment grounds is DENIED.

### 3. Evidentiary Claims

As the Second Circuit has repeatedly observed, "[a] district court has broad discretion in fashioning a remedy for the government's violation of its obligations under Rule 16(a), including ordering the exclusion of evidence." United States v. Salameh, 152 F.3d 88, 130 (2d Cir. 1998). Notably, a court's "decision not to exclude evidence that was the subject of a Rule 16(a) violation is not grounds for reversal unless the violation caused the defendant 'substantial prejudice.'" Id.

17

"Substantial prejudice" means "the prejudice resulting from the government's untimely disclosure of evidence, rather than the prejudice attributable to the evidence itself."  Sanchez, 912 at 23.

In the instant case, Smith claims that the Court admitted evidence in the course of the trial that caused Smith substantial prejudice.  In these arguments, Smith seeks to use Rule 33 as a vehicle to relitigate evidentiary rulings with which he disagrees.  However, Smith offers no authority to suggest that these allegedly erroneous evidentiary rulings would support his request for a new trial.  Therefore, Smith cannot show prejudice, and cannot prevail on his Rule 33 motion.

Because Smith cannot show that any of the evidentiary rulings to which he objected support his request for a new trial, his Rule 33 motion for a new trial on these grounds must be DENIED.

## CONCLUSION

For the reasons set forth above, Smith's Motions for a judgment of acquittal pursuant to Rule 29 and for a new trial pursuant to Rule 33 are DENIED in their entirety.

SO ORDERED:

_____
BARBARA S. JONES
UNITED STATES DISTRICT JUDGE

Dated:    New York, New York
          November 24, 2009